**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BOARD OF TRUSTEES of the PIPE FITTERS** | ) | |
| **RETIREMENT FUND, LOCAL 597;** | ) | |
| **BOARD OF TRUSTEES of the PIPE FITTERS** | ) | |
| **WELFARE FUND, LOCAL 597;** | ) | |
| **BOARD OF TRUSTEES of the PIPE FITTERS** | ) | |
| **TRAINING FUND, LOCAL 597; the** | ) | **11 C 973** |
| **BOARD OF TRUSTEES of the CHICAGO AREA** | ) | |
| **MECHANICAL CONTRACTING INDUSTRY** | ) | **Judge Guzman** |
| **IMPROVEMENT TRUST;** | ) | |
| **THE PIPE FITTERS' ASSOCIATION,** | ) | |
| **LOCAL 597 U.A.; BOARD OF TRUSTEES** | ) | |
| **of the PIPE FITTERS' INDIVIDUAL** | ) | |
| **ACCOUNT and 401(K) PLAN; and** | ) | |
| **BOARD OF TRUSTEES of the PIPE FITTING** | ) | |
| **COUNCIL OF GREATER CHICAGO,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GLOBAL MECHANICAL INC.,** | ) | |
| **an Indiana Corporation;** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

After Plaintiffs sued Global Mechanical, Inc. ("GMI") for delinquent contribution
payments under the Employee Retirement Income Security Act ("ERISA"), GMI filed a
counterclaim against Pipefitters Association, Local 597 ("Union") for breach of the no-strike
provision in the applicable collective bargaining agreement ("CBA"). The parties have filed
cross motions for summary judgment. For the reasons stated herein, the motions are granted in
part and denied in part.

**Facts**

In December 2010, GMI entered into a Subscription Agreement with the Union, whereby
it agreed to be bound by the provisions of the CBA negotiated between the Union and the
Mechanical Contractors Association for all times relevant to this action. (Def.'s LR
56.1(b)(3)(B) Stmt., Dkt. # 181, ¶ 11.) Specifically, the CBA provides that "[e]ach Employer
hereby agrees to be bound to the Agreement and Declarations of Trust ['Trust Agreements'] for

each Benefit Fund." (*Id.* ¶ 12.) Pursuant to the provisions of the CBA and the Trust Agreements, GMI was required to make monthly reports of hours worked by covered employees, *i.e.*, contribution reports, and pay contributions to the Trust Funds for each hour worked pursuant to the CBA at the negotiated rate. (*Id.* ¶ 13.) Pursuant to Section 502(g)(2) of ERISA, and the applicable provisions of the CBA and Trust Agreements, employers who fail to submit their monthly contribution reports and contributions to the Trust Funds in a timely manner are responsible for the payment of liquidated damages and interest for each month that contributions remain unpaid, plus any reasonable attorney's fees and costs of maintaining suit. (*Id.* ¶ 14.)

GMI failed to submit contributions for the months of December 2010 and January 2011 in the aggregate amount of $103,591.66. (*Id.* ¶ 16.) On or about January 25, 2011, the Union notified the employees of GMI that their benefits for the month of December 2010, including 401(k) wage deductions and Union dues, had not been submitted by GMI. (*Id.* ¶ 17.) The Union therefore notified employees of GMI that they were not required to report to work until GMI remedied its breach of the CBA by paying the delinquent benefit contributions. (*Id.* ¶ 18.) The Union also notified GMI that the employees would return to work as soon as GMI submitted the outstanding contribution reports and payment for December 2010. (*Id.* ¶ 19.) GMI failed to do so and the employees did not return to work. (*Id.* ¶ 20.) GMI never initiated the grievance procedure set forth in the CBA to complain of any alleged violation of the CBA by the Union. (*Id.* ¶ 21.)

The Trust Funds and the Union submitted a claim on GMI's Letter of Credit, which satisfied a portion of the delinquency, but the parties agree that GMI still owes the Trust Funds and the Union $3,591.66 in unpaid contributions, $10,347.46 in liquidated damages and $417.04 in interest for December 2010 and January 2011. (*Id.* ¶¶ 22-25.)

Article III, Section 5(a) of the CBA provides in relevant part:

> It shall be considered a violation of this Agreement, and shall be cause for cancellation of this Agreement as to an Employer, if an Employer shall fail, after reasonable notice from the Trustees, or the Union or the Education Fund Trustees, as the case may be, to furnish reports, pay Benefit Funds or Education Fund contributions or Wage-Work Assessments or to comply with the rules and regulations formulated and promulgated by the Trustees, or by the Union, or by the Education Fund Trustees, as the case may be.

(*Id.* ¶ 26.)

Article III, Section 5(b) of the CBA further provides in relevant part:

> The Union may cancel this Agreement as to any Employer under Section 5(a) in the following circumstances:
> 1. The Employer is more than 50% delinquent in its total contributions required to be made pursuant to Section 3 and 4 of Article III for any month and fails and/or refuses – after written notice of any delinquency – to remit the delinquent contributions within thirty (30) days of such notice;
> 2. The Board of Trustees of any one Benefit Fund approves cancellation; or
> 3. The Employer fails to procure and maintain a Surety Bond as described in Article XI, Section(c).

2

(*Id*. ¶ 28.)

Article XII –Joint Arbitration Board, Section 4(a) of the CBA provides in relevant part:

> All disagreements concerning the application or interpretation of this Agreement must be arbitrated. The Board shall be the arbitration forum and shall have the full
>
> power to enforce this Agreement and enforce working rules for the parties subject to this Agreement. It shall have the power to impose such penalties from time to time as it may deem advisable, including fines. The arbitral decision of the Board shall be final and binding on all parties subject to the Agreement.

(*Id*. ¶ 29.)

Article XII –Joint Arbitration Board, Section 5(a) of the CBA provides in relevant part:

> Should a dispute or disagreement arise between: the Union and the Association; an Employer and an Employee; or an Employer and the Union; such dispute or disagreement shall be submitted in writing to the respective President and Business Manager of the parties hereto with a copy to the Joint Arbitration Board within three (3) business days after the dispute or disagreement arises. Should the President and Business Manager fail to agree and dispose of the matter within twenty-four (24) hours, the dispute or disagreement shall then be taken up by the Joint Arbitration Board, or a sub-committee thereof consisting of an equal number of persons from the Union and the Association, for adjudication. The Board or sub-committee shall hear the evidence and render its decision as expeditiously as possible. All decisions shall be determined by a majority vote, and shall be final and binding on all parties.

(*Id*. ¶ 30.)

Prior to March 9, 2012, the CBA contained the following provision:

> Article 1, Section 1(c): It is agreed that during the time of this Agreement, and any
>
> extension thereof, there shall be no lock-out by any employer nor any strike, stoppage, slowdown, picketing or boycott by the Union, any of its members or any Employees.

(Pls.' LR 56.1(b)(3)(C) Stmt., Dkt. # 196, ¶ 5.)

**Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a genuine issue of material fact exists. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing there is a genuine issue for trial. *See Celotex,* 477 U.S. at

322; *Anderson*, 477 U.S. at 248. To succeed on a summary judgment motion, the evidence must be such "that [no] reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## Analysis

### GMI's Counterclaim

In its counterclaim, GMI alleges that the Union breached a no-strike clause in the relevant CBA by "pulling and/or removing its members from [GMI's] employ and/or directing its members to refrain from working for [GMI]" after a dispute arose between the Union and GMI. (GMI's Counterclaim, Dkt. # 16, ¶¶ 5-7.) GMI seeks damages from the Union in excess of $300,000.00. (*Id.* ¶ 8.)

According to the Union, the Court cannot consider GMI's counterclaim because GMI did not exhaust its administrative remedies by seeking to arbitrate its claim for breach of the no-strike provision. Specifically, the Union notes that the CBA requires that "all disagreements concerning the application or interpretation of this Agreement must be arbitrated." (Def.'s LR 56.1(b)(3)(B) Stmt., Dkt. # 181, ¶ 29.)

GMI contends that the provision is inapplicable for several reasons. First, it argues that it is not required to arbitrate the purported breach of the no-strike clause because the Union clearly waived its right to strike. In support, it points to *Dep't Store, Package, Grocery, Paper House, Liquor and Meat Drivers, Helpers and Warehousemen, Local Union 955 v. Berminghan-Prosser Paper Co.*, 364 F. Supp. 426 (D. Mo. 1973), in which the court held that because the union's waiver of its right to strike was not the *quid pro quo* for an undertaking by the employer to submit grievance disputes for arbitration, a dispute over the union's right to strike did not involve an arbitrable issue.

As an initial matter, the *Berminghan-Prosser* case is not binding on this Court. Moreover, "[t]he Seventh Circuit explicitly holds that there is a presumption of arbitrability unless there is no possible interpretation that the arbitration clause covers the asserted dispute." *United Food and Commercial Workers Local 655 v. Holten*, No. 12–CV–00732–DRH–DGW, 2013 WL 784379, at *2 (S.D. Ill. Mar. 1, 2013). Here, the language of the arbitration provision is clear: "all disagreements concerning the application or interpretation of this Agreement must be arbitrated." (Def.'s LR 56.1(b)(3)(B) Stmt., Dkt. # 181, ¶ 29.) Absent express language so stating, this Court cannot discern from the plain language of the CBA whether the Union's purported waiver of its right to strike was a *quid pro quo* for GMI to submit its grievances to arbitration. However, under the clear language of the CBA, GMI's claim that the Union breached the no-strike clause is subject to arbitration. GMI's argument that only those disagreements "concerning the application or interpretation of this Agreement" are subject to arbitration is a non-starter. GMI's claim that the Union breached the no-strike provision of the CBA concerns the "application" of the CBA. *Pietro Scalzitti Co. v. Int'l Union of Operating Eng'rs*, 351 F.2d 576, 579 (7th Cir. 1965) ("[T]he question raised by the pleadings and Union's supporting affidavit is whether Union violated the bargaining agreement. This is a dispute concerning the meaning, interpretation or application of the agreement."). To the extent that there is any doubt that GMI's counterclaim "concerns the application or interpretation" of the

CBA, it must be resolved in favor arbitration. *Id*. The Court finds that the arbitration clause applies to GMI's counterclaim.

GMI's citation to *Illinois Bell Tel. Co v. Int'l Bhd. Of Elec. Workers*, 330 F. Supp. 302 (S.D. Ill. 1971), does not persuade the Court differently. In *Illinois Bell*, the court denied the defendant's motion to stay the case pending arbitration because the arbitration provision in *Illinois Bell* made "no provision of any kind for employer initiation of grievances or for the processing of a grievance on the part of the employer." *Id*. at 303. Accordingly, the *Illinois Bell* court concluded that "[t]he employer here clearly has not . . . agreed to submit to arbitration the question of damages for a strike in violation of contract." *Id*. In this case, however, the arbitration clause expressly calls for arbitration "[s]hould a dispute or disagreement arise between: the Union and the Association; an employer and an Employee; *or an Employer and the Union*." (Def.'s LR 56.1(b)(3)(B) Stmt., Dkt. # 181, ¶ 30) (emphasis added).

The other case cited by GMI, *Cal. Trucking Ass'n v. Bhd. of Teamsters & Auto Truck Drivers, Local 70*, 679 F.2d 1275, 1282 (9th Cir. 1981), is also inapposite. In that case, employers sought damages for alleged violations by the union of the applicable collective bargaining agreement and the union argued that the dispute required arbitration. *Id*. at 1278. In allowing the suit to proceed, the district court concluded that "even if the agreement required submission of damages actions to the grievance procedures, [the union's] express repudiation of the collective bargaining agreement released the employers from any obligation to arbitrate." *Id*. at 1282. "Specifically, the [district] court found that [the union] consistently repudiated the entire collective bargaining agreement by denying throughout proceedings before the court that it was bound by the agreement." *Id*. The Ninth Circuit affirmed the district court on that issue. *Id*. at 1284-85. Here, there is no argument or evidence that the Union repudiated the CBA.

GMI also argues that it was not required to seek arbitration because the Joint Arbitration Board ("JAB") has no power under the CBA to award compensatory damages. The relevant provision in the CBA states that "[t]he Board . . . shall have the full power to enforce this Agreement and enforce working rules for the parties subject to this Agreement" as well as "to impose such penalties from time to time as it may deem advisable, including fines." (Def.'s LR 56.1(b)(3)(B) Stmt., Dkt. # 181, ¶ 29.) "It is elementary that the question of interpretation of the collective bargaining agreement is a question for the arbitrator." *Dexter Axle Co. v. Int'l Assoc. of Machinists & Aerospace Workers, Dist. 90, Lodge 1315*, 418 F.3d 762, 768 (7th Cir. 2005) (internal quotation marks and citation omitted). Thus, the issue of whether the JAB may award compensatory damages is up to the arbitrator. GMI's related argument that it would have been futile to seek arbitration because the issue is not arbitrable and the arbitrator does not have the power to award damages is unavailing. The Court has already determined that GMI's claim for breach of the no-strike provision is arbitrable and, as just noted, the interpretation of the CBA regarding the arbitrator's ability to award damages is left to the arbitrator.

Finally, GMI contends that the Union waived any right to arbitration by failing to move to compel arbitration and litigating the counterclaim. The Union sought to dismiss GMI's counterclaim for its failure to exhaust its administrative remedies, which the Court denied on the ground that the issue required consideration of evidence outside of the complaint and directed the Union to renew its motion at the summary judgment stage. (Dkt. # 43.) In addressing an argument similar to GMI's in a case where the union plead failure to exhaust as an affirmative defense but did not move to compel arbitration, the Seventh Circuit concluded that "although the

5

Union's litigation strategy is questionable, the pleading of its affirmative defense should have alerted the court and the plaintiff to the Union's contention that arbitral remedies should be exhausted before resorting to suit." *Mautz & Oren, Inc. v. Teamsters, Chauffeurs, and Helpers Union*, 882 F.2d 1117, 1126 (7th Cir. 1989). The Seventh Circuit noted that "[t]his is an especially apt outcome here, since it was [the employer], and not the Union, which was seeking relief for an alleged violation of the collective agreement; the primary responsibility to initiate arbitration proceedings was therefore on [the employer], not the Union." *Id*. As in *Mautz & Oren*, it was GMI's, not the Union's, responsibility to initiate arbitration proceedings regarding the purported breach of the no-strike provision. Thus, the Court finds that the Union's filing of its motion to dismiss was sufficient to put GMI on notice that the Union believed GMI needed to exhaust its administrative remedies. Accordingly, the Court finds that the Union did not waive its right to arbitrate.

The Court stays consideration of GMI's claim that the Union breached the no-strike provision pending exhaustion of available grievance procedures. *Id*. (concluding that "employer should have resorted to arbitration before filing suit under Section 301" and noting that "[o]n remand, [the employer's] contract claim should be stayed pending exhaustion of available grievance procedures"). To the extent that the Union states that the time to seek arbitration has passed given the CBA's requirement that all disputes be submitted for arbitration within three business days after the dispute or disagreement arises (Def.'s LR 56.1(b)(3)(B) Stmt., Dkt. # 181, ¶ 30), any question regarding the timeliness of GMI's grievance is left to the arbitrator. *Mautz & Oren,* 882 F.2d at 1127 ("Any question regarding the timeliness of [the employer's] grievance should be left for decision by the grievance committee or arbitrator.")

<u>Plaintiffs' Claim for Unpaid Contributions and Attorney's Fees</u>

GMI does not dispute that it owes $14,356.16 in unpaid contributions, liquidated damages and interest. (GMI's Opp. and Cross-Mot. Summ. J., Dkt. # 187, at 21.) Therefore, judgment is granted in favor of Plaintiffs in that amount.

Plaintiffs also seek $49,138.77 in attorney's fees and costs. GMI does not contest that Plaintiffs are permitted to recover attorney's fees but disputes the amount sought. Because Plaintiffs have already filed their motion for fees and supporting documentation, GMI shall have 14 days from the date of entry of this order to submit to Plaintiffs their specific objections. Within 10 days thereafter, the parties shall meet and make every effort to resolve any disputes as to the amount sought. In so doing, the parties shall provide the opposing party with any authority in support of their respective positions. In the event any disputes remain after the meet and confer, the parties shall file a joint memorandum identifying the remaining fees and costs under dispute and their respective authorities in support. The Court will rule by mail on the outstanding fees and costs in dispute. The Court reiterates that the parties shall approach their discussions with the full intent to resolve any disputes between themselves without further Court involvement.

**Conclusion**

For the reasons stated above, Plaintiffs' motion for summary judgment [168-1] is granted as to its claim of delinquent contributions and the Union's motion for summary judgment is granted in part as to the counterclaim. GMI's motion for summary judgment [186-1] is granted in part. Plaintiffs are awarded $14,356.16 in unpaid contributions, liquidated damages and interest. Plaintiffs are also awarded attorney's fees, the amount of which will be determined according to the procedure detailed above. Plaintiffs' motion to strike [189-1] is denied as moot. GMI's counterclaim for breach of the no-strike provision is stayed pending exhaustion of grievance procedures.

**Date**: March 19, 2013

**United States District Judge**
**Ronald A. Guzman**